RECEIVED
JUN 21 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Ronald Broussard, et al.                    Civil Action No. 6:99-CV-2199

versus                                       Judge Tucker L. Melançon

Aviara Energy Corp., et al.                 Magistrate Judge Mildred E. Methvin

**MEMORANDUM RULING**

Before the Court are a Motion for Summary Judgment or Alternatively Partial Summary Judgment filed by defendant Omega Natchiq, Inc. [Rec. Doc. 191], Lexington Insurance Company's opposition thereto [Rec. Doc. 217], Aviara Energy Corporation's opposition thereto [Rec. Doc. 218], plaintiff's opposition thereto [Rec. Doc. 231], Lexington Insurance's supplemental opposition thereto [Rec. Doc. 246], Omega's reply to Aviara's opposition [Rec. Doc. 228], Omega's reply to plaintiff's opposition [Rec. Doc. 249], Omega's supplemental reply to Lexington Insurance's supplemental opposition [Rec. Doc. 251], and Omega's second supplemental reply to Lexington Insurance's supplemental opposition [Rec. Doc. 260].[1]  For the

---

[1] Omega Natchiq, Inc. has filed a Motion to Strike Affidavit [Rec. Doc. 241] as well, contending that the November 30, 2004 affidavit of Philip White, submitted by defendant Aviara Energy in its supplement opposition to Omega's motion for summary judgment and by plaintiff in his opposition to Omega's motion for summary judgment, is inconsistent with his previous deposition testimony and this should be disregarded. Several parties have filed oppositions to Omega's motion to strike, including Lexington Insurance [Rec. Doc. 254] and Aviara Energy [Rec. Doc. 255]. The Court has applied the Federal Rule of Civil Procedure 56 summary

1

following reasons, Omega's motion will be granted in part and denied in part.

*I. Background*

This case arises from an accident that occurred on or about December 16, 1998, on a fixed platform in the Eugene Island area of the Gulf of Mexico, off the coast of Louisiana. Aviara Energy Corporation ("Aviara" hereafter) owned the platform and maintained service agreements with several independent contractors to perform various functions on the platform. These contractors included Island Operating Company ("Island" hereafter) and Cardinal Services Incorporated ("Cardinal" hereafter). Aviara contracted with Island to supervise daily maintenance and operations on the platform, pursuant to a Master Service Agreement dated August 20, 1986. (*Aviara Motion for Summary Judgment*, 2; *Aviara Statement of Uncontested Material Facts* ¶ 3.) Aviara contracted with Cardinal to perform wireline work, including the replacement of a subsurface safety valve on the "1-D" well located on the platform. (*Id.* at 3; *Id.* ¶ 5.)

Plaintiff Ronald Broussard was employed by Cardinal at the time of the incident, and was aboard the platform to perform wireline services, in association with the work being performed on the 1-D well. (*Complaint* ¶ IV.) Broussard,

---

judgment standard in reviewing all of the evidence *sub judice* and has accepted only those facts which are in conformity therewith. Therefore, Omega's motion to strike will be denied.

William Robinson, also an employee of Cardinal, and Brandon Derks, an employee of Island, were attempting to open an actuator valve on the 1-D well when the actuator exploded off its mounting, striking Broussard, and knocking him to the deck. (*Id.* ¶ VI; *Aviara MSJ*, 3.) Broussard, Robinson, and Derks were the only individuals present on the platform at the time of the alleged incident. (*Aviara MSJ*, 3.) Broussard alleges that the accident occurred because Derks used an unregulated nitrogen tank to "pressure up" the actuator. (*Plaintiff's Motion for Summary Judgment*, 3.) The actuator valve was equipped with a "pop-up valve" to relieve pressure when safe limits were exceeded, however the pop-up valve is alleged to have malfunctioned due to a heavy over-coating of paint that prevented it from engaging. (*Id.*) As a result of the accident, Broussard alleges to have sustained debilitating injuries to various parts of his body, including his back, neck, shoulder, and hand. (*Complaint* ¶ VI.)

Broussard filed the instant suit December 1, 1999 against Aviara and since has amended his original complaint seven times to add defendants, including Commercial Underwriters Insurance Company, Lexington Insurance Company, Island Operating Company, Ortco Contractors, Omega Natchiq, CBS Engineering, Technip Upstream Services, Commercial Union Assurance Company, Yorkshire Insurance Company, Marine Insurance Company, Terra Nova Insurance Company, AGF Marine Aviation

Transport, and TNT Sandblasting & Painting.

Omega Natchiq, Inc. ("Omega" hereafter) has moved for summary judgment in its favor, asserting that as a principal it has no liability for the acts of its independent subcontractors, and that alternatively the claims against it are perempted under Louisiana Revised Statute 9:2772. Omega further argues that it did not paint or otherwise perform any service to the actuator valve at issue. (*Omega's Motion*, 2.) Omega also cites the "accepted work doctrine" to argue that the passage of approximately a year and a half from the time Omega worked with the allegedly defective equipment at issue in this case to the time of Broussard's accident mandates the dismissal of any claims against Omega. (*Omega Motion for Summary Judgment*, 6.) Finally, Omega argues that the consortium claim of Jessica Broussard should be dismissed, which Broussard opposes.

Broussard opposes Omega's motion, arguing that the peremption statute cited by Omega does not apply to painters or to the type of maintenance work performed on the actuator valve. (*Plaintiff's Opposition*, 4.) Broussard also asserts that genuine issues of material fact exists with respect to whether Omega retained operational control over its subcontractors, whether Omega painted the valve, and whether the accepted work doctrine should apply to a case where the disputed length of time is only one and a half years. (*Id.* at 5-6.) In addition, Aviara and Lexington Insurance

oppose Omega's motion, arguing that the peremption statute is inapplicable to the claim by Aviara against Omega and that Omega's assertion of the accepted work doctrine is misplaced. (*Aviara's Opposition*, 5-6, 9.)

*II. Standard for Summary Judgment*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.*, 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### *III. Analysis*

A. <u>Applicability of La. R.S. 9:2772</u>

Omega contends that all claims against it are barred, pursuant to Louisiana Revised Statute 9:2772, which provides for a five year peremptive period for law suits arising out of construction projects or related work. (*Omega's Motion*, 5.) According to the statute, Omega argues that the five year period begins to run from the date of completion of the work at issue. Because Omega completed its work on the actuator valve in April 1997, and was not brought into the current suit until 2003, Omega asks the Court to agree with its interpretation of the statute and find that the claims against it in this suit are now barred.

Broussard, Aviara, and Lexington put forth several arguments in opposition to Omega's contention that La. R.S. 9:2772 applies to the case at bar. First, the parties argue that the statute, which was amended by the Louisiana state legislature in 2003 to shorten the peremptive period from seven years to five years, may not be

retroactively applied. (*Aviara's Opposition*, 6; *Plaintiff's Opposition*, 4.) Second, Broussard contends that the statute by its plain language does not apply to the type of work performed by Omega on the actuator valve. (*Plaintiff's Opposition*, 4.) Finally, Aviara argues that the work performed on the actuator valve is not covered under the statute, which applies only to immovable property. Aviara asserts that the actuator valve is not an immovable, nor a component part of an immovable. (*Aviara's Opposition*, 4-5.)

The Court finds that La. R.S. 9:2772 is not retroactive in its application, and therefore does not apply to the claims brought against Omega in the instant suit. At the time Omega completed its work on the actuator valve, approximately April 1997, the statute provided for a ten year peremptive period. *See* La. R.S. 9:2772 (1997). In 1999, the Louisiana state legislature amended the statute, shortening the peremptive period to seven years. When the amendment was enacted, the legislature expressly provided that "[t]he provisions of this Act shall have prospective application only and shall apply only to contracts entered into on or after the effective date of this Act." *See* Section 2 of Acts 1999, No. 1024 (§ 1 of which amends subsecs. A and C) (effective August 15, 1999). Subsequent Louisiana case law interpreting the statute and addressing the issue of its retroactivity agrees with the legislature's statement and honors its intention. *See August v. Grand Lake Const.*,

837 So.2d 78, (La.App. 5 Cir.2002). Omega entered into the applicable Master Service Agreement with Aviara in 1996. Therefore, both at the time the parties entered into the contract for work, and at the time Omega completed its work on the actuator valve, the pre-1999 version of the statute was in effect, providing for a ten year peremptive period, and rendering the claims against Omega timely made. Because the Court so finds, the additional arguments of Aviara and Broussard on this point need not be further analyzed. Accordingly, Omega's motion as it relates to this claim will be denied.

B. <u>Whether Omega Painted the Actuator Valve</u>

In its motion for summary judgment, Omega denies painting or otherwise working on the actuator valve. (*Omega's Motion*, 2.) Omega argues that TNT Sandblasting & Painting, Inc. painted the valve and that Omega subcontracted with Louisiana Valve Source, Inc. to inspect and repair the valve. (*Id.* at 3.) Omega points to the affidavit of Joey Zagar to support these contentions and to deny liability for any injury resulting from painting the actuator valve. (*Id.*, Ex. 1.) Both Broussard and Aviara dispute Omega's argument, and present evidence that contradicts the claim that Omega had no part in painting the valve, including inspection reports that expressly state that Omega was so involved. (*Aviara's Opposition*, 5.)

The Court finds that genuine issues of material fact exist regarding Omega's

responsibility for and performance of the maintenance painting of the actuator valve at issue in this case. Contradictory evidence has been submitted to the Court, and without making credibility determinations or weighing the evidence, tasks that must be undertaken by a jury, there can be no resolution of the issue on summary judgment. The law is clear regarding the duty of a court in this situation to "not weigh the evidence or evaluate the credibility of witnesses." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).

As stated above, a motion for summary judgment can be granted only if the pleadings, depositions and affidavits submitted by the parties show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Before a court can find that there are no genuine issues of material fact, it must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272 (5th Cir. 1991). The parties each submit different versions of the facts relevant to Omega's maintenance of the actuator valve which allegedly injured Broussard. Material facts regarding the nature and effect of service agreements entered into by Omega, and their interpretation by company employees, are disputed. Competent summary judgment evidence presents conflicts regarding responsibility for the painting and

maintenance of the actuator valve. These are the exact issues that may lead a jury, acting as trier of fact, to find Omega liable. Neither a case, nor an issue, in such posture is properly disposed of by summary judgment. Accordingly, Omega's motion in regard to this claim will be denied.

C. <u>Applicability of the Accepted Work Doctrine</u>

Omega asserts that pursuant to the accepted work doctrine, Omega should be relieved of all responsibility for its work on the actuator valve. Because approximately a year and a half passed between the time the work was completed and the time that Broussard was injured, Omega argues that it should not be held liable for any injuries resulting from an alleged fault of the valve. (*Omega's Motion*, 6-7.) In opposition, Broussard argues that one and a half years is too short a period of time to allow the accepted work doctrine to be applied on summary judgment, and that the issue should be brought before a properly instructed jury. (*Plaintiff's Opposition*, 6.) Aviara also opposes Omega's contention that the accepted work doctrine is applicable to this case. (*Aviara's Opposition*, 9-10.)

The Court agrees that Omega's argument is without merit, and the issue of whether such a doctrine should apply in this case, what constitutes the passage of a "reasonable amount of time," or whether it offers Omega any relief from liability, is a question properly brought before a jury, constituting a classic triable issue

dependent upon the facts of the case. *See Griffin v. International Ins. Co.*, 727 So.2d 485 (La.App. 3 Cir.1998)(holding that a jury could have reasonably concluded that the period of two and a half years that passed from the time the pole was installed to the time of the accident is a reasonable amount of time for the contractors duty to have ended); *Hall v. Rapides Parish School Board.*, 491 So.2d 817 (La.App. 3 Cir.1986)(holding that after a reasonable amount of time, the duty owed by a contractor would cease and it would become the duty of the owner to discharge any duty that may exist). Accordingly, summary judgment is not appropriate on this issue and Omega's motion in regard to this claim will be denied.

D.  Jessica Broussard's Consortium Claim

Omega argues that under maritime law there can be no claim for loss of consortium by an injured party's dependent and thus Jessica Broussard's claim should be dismissed. (*Omega's Motion*, 7.) Omega contends that when an accident occurs outside state territorial waters, consortium claims cannot be brought. Omega cites *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119 (5th Cir.1994), for the proposition that Jessica Broussard's consortium claim is precluded. In *Nichols*, the Fifth Circuit held that a loss of consortium claim is only viable when it is based upon injury to a longshoreman (and by extension, to a seaman) which occurs in state territorial waters. 17 F.3d at 123. Broussard argues that in a suit brought by a non-

11

seaman under the Outer Continental Shelf Lands Act, Louisiana law is applicable and thus consortium awards are allowed. (*Plaintiff's Opposition*, 6.)

The United States Supreme Court, in *Rodrigue v. Aetna Casualty Co.*, 395 U.S. 352 (1969), stated that the law to be applied in actions governed by the OCSLA is "federal law, supplemented by state law of the adjacent state." *Id.* at 355. Thus, OCSLA mandates that federal law be applied to the instant case, supplemented as necessary by the law of the adjacent state, Louisiana, to the extent that it is not inconsistent with federal laws and regulations. *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 327 (5th Cir.1987).

Under general maritime law there is no claim for loss of consortium, whether seaman or non-seaman, on the Outer Continental Shelf. *See, Mobil Oil Corp. v. Higgenbotham*, 436 U.S. 618 (1978); *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 123 (5th Cir.1994); *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990). Broussard asserts that the Outer Continental Shelf Lands Act requires the application of the law of Louisiana rather than maritime law with respect to Jessica Broussard's consortium claim. (*Plaintiff's Opposition*, 6-7.) However, while it is true that OCSLA was intended to apply to the full range of disputes that might occur on the Outer Continental Shelf, it was not intended to displace the general maritime law. *Tenn. Gas Pipeline v. Houston Cas. Ins.*, 87 F.3d 150, 154 (5th Cir.1996). The Fifth Circuit has

articulated the following test: "[F]or adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant: (1) [t]he controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) [f]ederal maritime law must not apply of its own force; and (3) [t]he state law must not be inconsistent with federal law." *Smith v. Penrod Drilling Corp., et al.*, 960 F.2d 456, 459 (5th Cir.1992) *citing Union Texas Petroleum Corp. v. PLT Eng'g*, 895 F.2d 1043, 1047 (5th Cir.1990). Generally, where OCSLA and general maritime law could both apply, the case is governed by maritime law. *Smith v. Penrod Drilling Corp.*, 960 F.2d 456, 459 (5th Cir.1992).

As noted above, there is no claim for loss of consortium on the Outer Continental Shelf. Thus, Jessica Broussard has no claim for loss of consortium as the alleged injury to her husband occurred not in state territorial waters but on the Outer Continental Shelf. Accordingly, Omega's motion will be granted in part and Jessica Broussard's loss of consortium claim will be dismissed.

E.  Liability of Omega for Alleged Acts of Its Independent Contractors

Finally, Omega asks the Court to find that as a principal, under applicable Louisiana law, it is not liable for the offenses of the independent contractors it employed to perform painting and maintenance work on the actuator valve.

13

(*Omega's Motion*, 5.) Two well-recognized exceptions to this rule exist, and Omega argues that neither applies. The first is in those cases where ultra-hazardous activity is being performed. The second is in those cases where the principal retains operational control over the activity in question. Broussard argues that Omega's assertion that TNT, as its subcontractor, was an independent contractor not subject to Omega's operational control is not supported by the evidence submitted to the Court on summary judgment. (*Plaintiff's Opposition*, 5.)

First, the Court notes that Omega's reliance on this Court's August 13, 2003 ruling [Rec. Doc. 99] is misplaced, as the Court found that neither exception applied to Aviara. Although the Court similarly finds in this instance, as held in the previous ruling, that no ultra-hazardous activities were involved, its finding that regarding operational control of Aviara as a principal with regard to the work being performed by Aviara's subcontractors is totally inapposite to the present issue of Omega's retention of operational control over its own subcontractors. Rather, the Court finds that with respect to Omega's level of operational control over its subcontractors, particularly TNT, insufficient evidence has been introduced on summary judgment to permit the Court to conclude as a matter of law that the exception is inapplicable. Accordingly, Omega's motion in regard to this claim will be denied.

*IV. Conclusion*

For the foregoing reasons, Omega's motion for summary judgment will be granted in part, and Jessica Broussard's loss of consortium claim will be dismissed with prejudice. With respect to all other claims raised in its motion for summary judgment, Omega's motion will be denied.